**CALDWELL–CLEMENTS, Inc. v. Mc-GRAW–HILL PUB. CO., Inc. et al.**

United States District Court
S. D. New York.

March 31, 1952.

**534**

Gold & Nickerson, New York City (Robert E. Nickerson, New York City, of counsel), for plaintiff.

White & Case, New York City (Philip H. Weeks, Edgar E. Barton, Donald Cronson, New York City, of counsel), for defendant McGraw-Hill Pub. Co., Inc.

DIMOCK, District Judge.

This is a motion by defendant McGraw-Hill Publishing Company, Inc. to strike interrogatories served upon it by the plaintiff Caldwell-Clements, Inc. The action is brought by the plaintiff charging McGraw-Hill Publishing Company, Inc., and James H. McGraw, Jr., with, among other things, a conspiracy in restraint of trade, and monopolization or attempted monopolization in the publishing business and particularly in the electrical trade and industry magazine fields. It is also charged that defendants have acquired interests in other publishing businesses in violation of the anti-trust laws.

The interrogatories cover a wide range of matters and the objections raised to them are extensive. Probably the simplest manner of dealing with the objections will be to consider the interrogatories in the order generally in which they appear but, wherever it appears that particular points have application to other parts of the interrogatories as well, to consider together all of the interrogatories to which the points are applicable if that can conveniently be done.

The interrogatories are propounded to the corporate defendant which will be hereinafter referred to as the defendant.

Both plaintiff and defendant are engaged in publishing trade or business magazines, plaintiff's publication being "Radio and Television Retailing" and defendant's "Electrical Merchandising". Defendant publishes a large number of such magazines as well as other matter and has been in the publishing business for a long time. Plaintiff describes itself as an independent publisher and has been publishing trade magazines in the electrical and radio fields. It was founded in 1935 by two former employees of the defendant.

The parties have had a long history of complicated and varying relationships including prior litigation. Suffice it to say that, for present purposes, they are competitors in the fields where plaintiff has been active. It also appears that this competition has been intensified recently. A number of the interrogatories deal with claims made by defendant in connection with "Electrical Merchandising", the magazine that it publishes.

### The General Objection to All Interrogatories.

The first point made by the defendant is that the interrogatories should be stricken in toto because it is said that they are designed to and do submit defendant to oppression, undue annoyance, and expense. Defendant's view is that they constitute per se an annoyance and oppression of defendant. The interrogatories take up 53 pages and by defendant's computation

involve 9,769 separate paragraphs. Much is made of the defendant's claim that by its own computation more than 293,000 answers are required. Defendant admits, however, that 264,000 of these answers are to be made under Interrogatory XI, which, aside from a few minor questions, asks for the names and addresses of persons appearing on some seven lists, the names and addresses of the individuals charged with duty of compiling and maintaining such mailing lists, the names of the persons actually preparing the answers, and identification of all sources consulted by defendant's representatives for the purpose of preparing such answers and of all sources of information actually used in preparing such answers. The lists are regularly maintained and reproduced by defendant in its business. The burden claimed in answering these 264,000 questions, at least, is not impressive. In a few instances, the defendant attempts to indicate the amount of time and effort required to answer certain interrogatories but only in one instance does it show the number of man-days that will be necessary and even there no estimate of expense is offered. No doubt these interrogatories impose some burden on the defendant. Interrogatories generally do, but the burden here is far from constituting such a hardship as to require striking the entire set of interrogatories on the basis of annoyance, expense and oppression. Further consideration of the objection of annoyance and oppression will be given, however, where appropriate to particular interrogatories.

Defendant also makes the general objection that the interrogatories are designed to maneuver defendant into an unfavorable position. The support for this contention in the affidavit submitted with the objections is the statement that, in view of the burden of the interrogatories, it can only be concluded that the sole purpose of the plaintiff in serving the interrogatories is to harrass, oppress and vex the defendant. That conclusion I cannot accept nor can I say, considering the entire set of interrogatories, that they are designed to maneuver defendant into an unfavorable tactical position such as Judge Holtzoff discussed in Aktiebolaget Vargos v. Clark, D.C., 8 F.R.D. 635, 636.

## Interrogatory I and the Question of the Period With Respect to Which Interrogatories are Proper.

Defendant has made general objections as to various interrogatories which concern facts which have occurred subsequent to the commencement of the action or in a period with respect to which the statute of limitations has run.

■ The objection as to inquiry into matters subsequent to the commencement of the action is frequently and effectively met by the point that the interrogating party can normally supplement its pleading so as to include that period and it is pure formalism in such cases therefore to bar such an inquiry. Conmar Products Corp. v. Lamar Slide Fastener Corp., D.C., 2 F.R.D. 154. The better practice seems to be to allow such questions and in this case to a large extent the objection has become moot since supplemental pleadings dealing with most of these matters have recently been allowed by Judge Bondy, D.C., 12 F.R.D. 403.

From the second objection, that as to matters occurring beyond the period of the statute of limitations, the defendant has already retreated. It now urges that this court consider the time limitation objection as addressed to the discretion of the court. It then points to the restriction placed on the admission of evidence antedating 1935 in the case of U. S. v. Morgan, Civ. 43–757, presently pending in this district, and suggests that 1935 would be a suitable date with which to limit discovery in this case.

Of course, there are tremendous differences between the Investment Bankers' Case and this one. Restrictions which may be deemed necessary in a case of the proportions of the Investment Bankers' Case, may well have little or no application in a case like this. At the least, the differences between the cases constitute an important factor in considering the application of this precedent. Beyond this, the ruling in the Investment Bankers' Case was not an abso-

lute bar to the pre-1935 evidence; it still left it open to the plaintiff under some circumstance to introduce evidence antedating 1935, providing it met certain requirements, e. g. Id. Tr. 9167–9168, Oct. 4, 1951, Tr. 9511, Oct. 11, 1951 and Judge Medina's recent ruling of Feb. 4, 1952 Tr. 12135–12139. This brings us to the other important distinction between this case and the Investment Bankers' Case. The ruling in the latter case dealt with the introduction of evidence upon the trial and not, as here, a proposed limitation on discovery. It may well be that upon the trial of this action a similar restriction upon the introduction of evidence should be imposed. The question before the court now, however, is whether such a restriction should be imposed upon discovery.

■ Since almost all of the interrogatories as to which this objection was raised except Interrogatory I deal with matters occurring from 1935 on, this question really comes down to the period of inquiry that will be allowed under Interrogatory I. This interrogatory inquires into the acquisition of other magazines or interests in other magazines made by defendants, the alleged sub rosa operation of other magazines by defendants and the dealings between defendant and certain named magazines relating to sales or publishing practices and to the possibility of acquiring interests in other magazines.

There is little room for doubt that such an inquiry is highly relevant to the subject matter of an action in which the defendant is charged with a conspiracy in restraint of trade and monopolization in the publishing industry and specifically with illegal acquisitions of interests in other publishing businesses and control of their policies while publicly holding itself out as a competitor of such publications.

Defendant's suggested time limit of 1935 is perhaps based on the fact that plaintiff came into being at about that time. Information antedating plaintiff's existence, however, is relevant in this type of action and can very well be admissible at the trial. Baush Machine Tool Co. v. Aluminum Co.

of America, 2 Cir., 72 F.2d 236, 239, certiorari denied 293 U.S. 589, 55 S.Ct. 104, 79 L.Ed. 683, made it clear that evidence of transactions occurring long before the injury complained of and of the history of an organization is admissible upon the trial of monopolization cases. Plaintiff's position is not entirely clear as to the period which its inquiry should be allowed to cover. In its reply memorandum, it insists upon discovery to 1887 (the earliest date actually specified in connection with the conspiracy in the complaint is 1889). In the Addenda to Plaintiff's Reply Brief, however, plaintiff points only to acquisitions by defendant from 1910 to 1928 and the affidavit in opposition to the motion, from which the court should be able to glean the desirability of discovery so retrospective, refers only to matters occurring in the 1920's.

In dealing with a similar problem Judge Rifkind has said that "The asserted history of the conspiracy and not the scope of plaintiff's damage provides the temporal boundary for the discovery". Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D. C., 7 F.R.D. 260, 262. While this is true, defendant should not be put to needless work seeking out information which does not exist or has no significance. In view of plaintiff's statements, it would seem reasonable to limit its inquiry to such matters as occurred in 1910 and since.

At this point, it is appropriate to resolve the specific objections of irrelevancy addressed to certain parts of Interrogatory I. Defendant objects to questions going beyond the electrical publishing field, questions relating to activities and interests of the McGraw family and this defendant's employees and questions dealing with mere conferences.

■ Some of the questions under the designations I F, I G and I H, inquire as to interests in "any publication or publishing property". So far as definition is concerned, these words leave much to be desired. The complaint alleges a conspiracy to restrain competition in the "publish-

ing business", and monopolization or attempts to monopolize particular fields of "publishing activity", as well as similar charges with respect to the "electrical publishing field". The specific acts alleged, however, refer to defendant's activities in connection with publication or publishing businesses and do not refer to any other types of publishing *property*. These questions should be limited therefore to interests in any publications or publishing businesses. While this conclusion sets an outside limit to the inquiry, it at the same time fixes the scope of the inquiry as covering the entire publishing field at least. Thus, those questions dealing with certain gardening magazines are proper though going beyond the electrical publishing field in which plaintiff is engaged. Bordonaro Bros. Theatres, Inc., v. Loew's, Inc., D.C., 7 F.R.D. 210, 213, cited by defendant, is not authority to the contrary, for the court there explicitly said that, if the complaint had alleged conspiracy in geographical areas other than the one in which the plaintiff did business, proof of acts going to show conspiracy in such other areas would be relevant and therefore within the scope of discovery. The language of that case would thus support the determination made here. The questions insofar as they relate to the activities and interests of the McGraw family and this defendant's employees in publishing fields are, in view of the charge of sub rosa acquisition and operation in pursuance of the alleged conspiracy, equally relevant. The same is true of I E which asks for information concerning acquisitions not promptly reported to defendant's stockholders.

The questions inquiring as to any conferences had with representatives of each of four named magazines which conferences related (a) to sales or publishing practices of any McGraw-Hill magazines or of the named magazines or (b) to the possibility of acquiring a financial interest in the named magazine are similarly relevant. This group includes Interrogatories I A 2-5 as so numbered and as they are incorporated by reference in Interrogatories I B, I C and I D. If such conferences were held, the information sought might reveal acts in pursuance of the alleged conspiracy and, though nothing may have come of any conferences, the fact that certain matters were considered may be just as significant.

Defendant also objects that certain parts of Interrogatory I and parts of other interrogatories call for information not within the knowledge of the defendant. The position that plaintiff has taken on this objection in its memorandum is that it is as much entitled to know that defendant does not know a certain fact as it is entitled to know that defendant does know the fact. Then it goes on to say that all defendant need do is admit its lack of knowledge. Defendant is content with this resolution of the objection and it is therefore so ruled upon. This disposes of this objection to the following Interrogatories: I F, I G, I H, I A 4 and I A 5; I B, I C and I D insofar as they incorporate by reference I A 4 and I A 5; II B 1 b (iii) and (vi) and II B 1 (c) (iii) and (vi) and other interrogatories which incorporate them elsewhere by reference; XII I 2(i) and XII J 2(g).

Another matter having general application to the entire set of interrogatories is the ruling upon the objections to I A 6. Interrogatory I A 6 requires, referring to the preparation of the answers to the paragraphs preceding it, the names of the persons preparing the answers, all sources consulted by defendant's representatives for the purpose of preparing such answers and all sources of information actually used in preparing the answers. The objections are first based (a) on the theory of Sutherland Paper Co. v. Grant Paper Box Co., D. C., 8 F.R.D. 416, that questions asking the interrogated party whether he has made a complete and full inquiry are improper and (b) on the claim that the questions are extremely burdensome and oppressive since they are asked in connection with practically every question put in the entire set of interrogatories.

Rather than asking defendant whether it made a proper inquiry, these questions seem to be directed toward the

discovery of further sources of evidence such as the existence of documents and the identity of persons having knowledge of relevant facts. Without doubt, this is a well recognized purpose of interrogatories. The claim of undue burden and oppression is of a general nature and without the support of a specific and detailed showing. The burden imposed by the questions is not apparent to me. It would seem that notations or a simple record made during the preparation of the other answers would make the responses to these particular questions a comparatively easy task. This objection is therefore overruled as to I A 6 and as to its counterparts throughout the set.

■ This leaves only the objection on the ground of annoyance, oppression and undue expense addressed to Interrogatory I and it is put to the interrogatory as a whole. Certain of the rulings thus far made have reduced the task imposed by this interrogatory, although, to be sure, a great deal remains for defendant to supply. Defendant does not claim that the information sought is readily known to plaintiff and I cannot say that it imposes an excessive burden on defendant or is oppressive. The fact that to answer interrogatories might be burdensome or expensive is not a valid objection if the information is relevant and material, Shrader v. Reed, D.C., 11 F.R.D. 367, and the information sought here is highly relevant as well as being material. This is not to say that defendant may not further reduce its task by supplying plaintiff appropriate documents containing the information sought in reasonably manageable form in lieu of answers.

### Interrogatories II, III, IV, V, VI and VII.

■ Interrogatories II, III, IV, V, VI and VII are so closely related to each other that they can be dealt with to a large extent as a group. This treatment is especially appropriate with respect to the objection of irrelevance which is vigorously raised by defendant.

The interrogatories are based on various allegedly false representations made by defendant as to its high standing in the electrical field or the radio-tv phase of it in the estimation of readers and advertisers in one or both of those groups. The interrogatories try to determine the identity of persons connected with and responsible for publication of the representations and to obtain the data purporting to support the representations. The objective of these interrogatories appears to be to show that defendant made false claims, to illustrate defendant's competitive methods, to show that defendant used illegal means to obtain exclusive contracts and to show that, by use of these false claims, methods and means, defendant attempted to monopolize the radio-tv field.

In view of the recent granting by Judge Bondy of plaintiff's motion for leave to amend and supplement its complaint so as to include allegations covering these matters involved in these interrogatories an extended discussion of the relevancy of false claims to the subject matter of the action will not be necessary except in a few cases. The amendment alleges in part that defendant, as part of its effort to exclude its competitors from the advertising fields in which it was interested and to obtain exclusive contracts, made claims, many of which were false, that various reader interest surveys showed that defendant's magazines were preferred over all others by readers in the fields to which such magazines were devoted. It alleges further that the false claims were made with the purpose and effect of harming magazines competing with defendant's.

In granting the motion to amend and supplement the complaint, Judge Bondy has taken the amendment as alleging acts in furtherance of the conspiracy to monopolize. This would make these matters relevant to the subject matter of the action. Further support for this view is to be found in Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, where it was held that a plaintiff may show defendant's false representations as part of an attempt by defendant to restrain competition and to effect a monopoly. The court there further held that certain false claims by the

defendant, if part of an attempt to effectuate a monopoly, are not outside of the Anti-Trust Acts, 15 U.S.C.A. § 1 et seq. merely because they furnish a basis for causes of action for unfair competition. This leaves no doubt of the relevance of this group of interrogatories for purposes of discovery at least.

The first interrogatory where the question of relevance of false claims requires individual treatment is Interrogatory V which is concerned with certain representations made by defendant in "Standard Rate and Data Service" as to the amount of advertising carried by "Electrical Merchandising" and the extent to which advertising was "concentrated" in defendant's magazine in certain years. While the amendment allowed by Judge Bondy, strictly speaking, alleges false claims only with respect to reader interest surveys, an attempt to uncover information which would show false claims with respect to "Electrical Merchandising's" advertising pre-eminence would be relevant to the subject matter of the action on the same theory or basis. Similarly, even if, as defendant says, the representations made a comparison with a publication other than plaintiff's, defendant's conduct or claims with respect to its other competitors would be relevant.

■ The second interrogatory where relevance of false claims requires individual treatment is Interrogatory VII which calls for extremely detailed information as to preparation and making of reader interest surveys "conducted or being conducted with relation to 'Electrical Merchandising' which survey is not yet completed, or, if completed, has not yet been distributed". This seems to be an inquiry into the largely internal affairs of defendant and its relevance is far from obvious to me. As was mentioned earlier, plaintiff's amendment supports the relevance of its inquiry into allegedly false claims made by defendant. However, I cannot say that it gives relevance to defendant's activities simply because plaintiff says (what may or may not be true) that they may later be used by defendant as a basis for further claims which would be a proper subject of inquiry. On the other hand, Interrogatory VII puts defendant to a substantial task in investigating and compiling the information sought. Under these circumstances defendant should not be required to answer this interrogatory.

With the objection as to relevance of false claims thus disposed of there are left for consideration five objections addressed to certain parts of this group of interrogatories. These objections are founded on defendant's claims that certain questions are improper since they are based on a misunderstanding of defendant's representations, that certain questions involve an excessive and oppressive amount of research and compilation of data and that certain questions require the disclosure of trade secrets.

■ Interrogatory II B 1(b) (i)–(xvi) seeks information concerning "each survey of leading manufacturers showing the radio-tv retailers' rating of their most useful trade publications" and Interrogatory II B 1 (c)(i)–(xvi) seeks information concerning "each survey of leading-appliance-radio-tv dealers of leading manufacturers" showing the appliance "retailers rating of their most useful trade publications". Both these interrogatories are directed toward representations made in the "Best Seller" advertisement which appeared in the August 1951 issue of "Electrical Merchandising", Exhibit A attached to defendant's Order to Show Cause and Affidavit. This advertisement refers to an analysis of surveys of leading-appliance-radio-tv dealers of leading manufacturers which shows the retailers' rating of their "most useful" trade publication. Below this appears a box containing two divisions, one entitled "Appliances" and the other "Radio-TV". In each division, there is a list of publications which have different numbers placed opposite their names in columns headed by different months. In both divisions of this box, "Electrical Merchandising" has the number 1 opposite it in each column headed by a named month.

540

The inference that could be drawn from this is that surveys show the rating of defendant's magazine to be first with respect to both appliance retailers and radio-tv retailers. Defendant claims that somehow plaintiff has misunderstood the representations and that the advertisement "makes no claim to preference among appliance retailers or radio-tv retailers". This dispute need not be resolved now. All that need be said is that plaintiff's inference is a possible one, that it may inquire on that basis and that if defendant does not have any surveys as described by these interrogatories it may so answer or it may qualify its answers where that is appropriate. What has been said above applies with equal force to Interrogatories II B 2–II B 9.

■ Interrogatory II B 12, also provokes a claim by defendant of misunderstanding of its representations by plaintiff. In the "Best Seller" advertisement previously referred to, there is the statement that "leading national media, critical judges of advertising values, use Electrical Merchandising exclusively". In connection with this representation, plaintiff seeks, for each calendar year from 1935 to 1950, the names and addresses of, and the advertising revenues received from, radio-tv and household appliance advertisers who advertised exclusively in defendant's magazine. Defendant says it made no claim that any advertiser of radio-tv products advertised *exclusively* in "Electrical Merchandising". With this I would agree, for the words "leading national media" hardly can be taken as referring to either radio-tv or household appliance advertisers. The defendant's interpretation is that these words refer to national publications and not advertisers of products. This is supported by the fact that the May 1951 issue of "Electrical Merchandising" submitted as an appendix to defendant's Reply Memorandum does contain advertisements of such national publications as Saturday Evening Post, Life, Ladies' Home Journal, Better Homes and Gardens and Woman's Day.

Defendant further says that in order to answer the questions in subparagraphs (a) and (b) of Interrogatory II B 12, it would have to obtain the name of each advertiser in each of the 12 issues of its magazines in the years from 1935 through 1950 and then examine each of more than 200 publications to determine whether in fact its advertising in "Electrical Merchandising" was exclusive. Plaintiff's interpretation of the representation is so far-fetched that there is little relevance to the questions in their present setting. Consideration of the slight relevance of the questions, in conjunction with the fact that at least some compilation would be necessary to answer the questions, leads to the conclusion that Interrogatory II B 12 is improper and that it should be stricken.

■ Interrogatories III B 1 and III B 2 refer to a representation made in one of defendant's sales presentations, Exhibit B attached to defendant's Order To Show Cause and Affidavit. The presentation has on its front page: "Increase and improve your distribution and cut sales costs with your radio-tv advertisements by reaching men who sell your product in (a picture of the front page of an issue of 'Electrical Merchandising' appears at this point) their most useful * * * trade publication" and further below "determined by independent surveys". In the text on the second page appears the statement "Recent studies by Radio-TV manufacturers show that these dealers read Electrical Merchandising more regularly and find it more useful than any other trade publication in the field". It can be inferred that this presentation refers to surveys of retailers of radio-tv products and again plaintiff should be entitled to inquire as to such surveys. If defendant referred to surveys of appliance dealers in the presentation, questions put as to such surveys should also be answered. If on the other hand no appliance or radio-tv surveys were referred to, it can so answer.

Interrogatory IV inquires as to a representation made by the defendant in "Standard Rate and Data Service". The repre-

sentation is that with respect to the merchandising of electrical appliances and radio sets "in every survey made during the last ten years by manufacturers on dealers' lists representative of Electrical Merchandising's circulation Electrical Merchandising has stood first by a wide margin. Details of these surveys are available." The objection of irrelevance addressed to this interrogatory is overruled on the same basis as the same objection to the other interrogatories in this group. A slightly different matter is presented by the objection to Interrogatory IV B, which incorporates by reference subparagraphs (i)–(xvi) of both Interrogatories II B 1(b) and II B 1(c). Defendant in its objections to IV B followed suit and incorporated by reference its objections to the same interrogatories. There is no reason why the ruling on the incorporated interrogatories should differ from that made as to them as they originally stood, except on the theory that the questions as incorporated are inappropriate because the plaintiff has been mistaken in treating the representations presently considered as dealing, like the original ones, with surveys of appliance dealers on the one hand and radio-tv dealers on the other. It is true that this representation does not in its terms refer to these two separate kinds of surveys. It does, however, refer to dealers' surveys pertaining to the merchandising of both electrical appliances and radio sets. Since the representation does involve surveys of appliance and radio dealers, plaintiff is entitled to make the same inquiry that it makes with respect to the other representations. The difficulty arises out of the fact that some of the questions as incorporated are addressed to appliance surveys, while the others are addressed to radio-tv surveys. It may well be that the surveys referred to in this representation are of an entirely different character and in that case the questions may be inappropriate. Nevertheless, as I have indicated above, this does not require the striking of these interrogatories. If, in any case, there was no survey of the kind described in the interrogatory defendant can so answer.

Interrogatories II B 1(b)(xii) and II B 1(c)(xii) call for the names, addresses and employers of each individual to whom copies of the radio-tv or appliance surveys referred to in Interrogatories II B 1(b) and II B 1(c) were distributed. Defendant objects that answering these questions would require an excessive and oppressive amount of research and compilation. It points out that some 28 employees would have to be interviewed, that its average salesman gets in touch with some 400 companies and advertising agencies each year, seeing several persons on each call, that in 1950 "Electrical Merchandising's" six full time salesmen had 4,662 interviews and that no record is kept of other contacts by its salesmen at conventions. To answer this question as to probably several surveys may prove to be a sizable task. While the information sought is relevant, the precise details sought in themselves are not very significant. Taking into account also the likelihood that plaintiff can reach its objective of showing the extent of the distribution of the surveys by other means, defendant need not fully answer these questions. There is, however, the following qualification: defendant should answer these questions to the extent that it already has records of the information sought since that would involve practically no burden. This ruling applies as well to these interrogatories as they are incorporated by reference in other interrogatories.

Closely related to this matter is Interrogatory VI which calls for the date, place and identification of participants with respect to any conferences held since August 1, 1951, between representatives of defendant and any advertisers, and which related to the advertisers' activities in connection with "Electrical Merchandising" reader interest surveys. It also asks for an identification of written communications relating to reader interest surveys passing between representatives of defendant and some eight named advertisers or agencies. The communications to be identified are solely those since variously fixed dates. Only one of these goes back as far as 1941 and most of them go back no fur-

542

ther than August 1, 1949. The only objection addressed to this interrogatory that has not already been considered is that of relevance. I have already rejected the objections as to the relevance of the inquiries into reader interest surveys generally. These questions going into the circumstances surrounding them in a carefully circumscribed fashion should similarly be deemed relevant.

There remains as to this group of interrogatories two specific objections addressed to parts of Interrogatory V. They are V A 2(c) and (d) which are objected to on the ground of their requiring excessive and oppressive research and compilation of data and V A 3(a)–(b) which is objected to on the ground of requiring the disclosure of a trade secret. Here, as elsewhere in this memorandum, the objections to an interrogatory are considered and ruled upon as addressed not only to the interrogatory as first propounded but also to it as incorporated by reference in other interrogatories. The representations dealt with in Interrogatory V are as to the quantity of advertising carried by "Electrical Merchandising" which was "exclusive and not carried by the second publication" and the percentage of advertisers who "concentrated their advertising in Electrical Merchandising". After asking for various items of information including a description of any computation or analysis of data supporting the representations, plaintiff asks in V A 2(c) and (d) the name of each advertiser referred to in parts of the representations, his product advertised and the issues of "Electrical Merchandising" or the "second publication in which his advertisement appears. This question is intended to cover all issues of "Electrical Merchandising" and the "second publication" for a period of five years.

■ Defendant states that the records it keeps to support the representations do not include all the detailed information plaintiff seeks, citing, for example, product and issue information. The likely accessibility of this information to the plaintiff by other means and the relevance of the details sought as compared to the burden placed on the defendant leads to the conclusion that defendant should not be required to answer them except to the extent that it already has a record of the information sought.

Interrogatory V A 3(a)–(b) (i) asks for other data maintained by defendant. In particular, subparagraph (a) asks for a description of each form of record which compares in any fashion whatsoever "Electrical Merchandising" with any other trade publication, subparagraph (b) asks whether in the year mentioned in each representation any such written comparison was made and, if so, subparagraph (b)(i) asks for the details of each such comparison. Defendant objected that to furnish the material requested in these subparagraphs would result in the disclosure of trade secrets. Plaintiff, in its memorandum opposing the objections, made no attempt to support the interrogatories except insofar as they required furnishing the form of the record. Defendant countered by withdrawing its objection to furnishing the form. In view of the plaintiff's failure to support its position, defendant's interest in keeping this matter secret and the serious doubts as to relevance of data unconnected with the alleged false claims, defendant should not be required to answer these questions except as to the form.

Interrogatory VIII.

Interrogatory VIII is entitled "As to Certain Portions of Defendant's Preparation for Trial." Here, plaintiff inquires whether defendant or its attorneys have employed or instructed any persons to investigate the personal lives of four persons associated with plaintiff. Plaintiff also inquires into defendant's investigation of the making of certain reader interest surveys which were employed by plaintiff in plaintiff's motion for a temporary injunction in this case. The questions seek information as to the nature of the investigation, the names and addresses of the investigators, the instructions given the investigators, the inquiries made by the investigators, the dates and places of the

inquiries and the report made to the defendant or its attorneys.

Aside from an objection already considered, defendant's motion raises only the objection of irrelevance to this interrogatory. In its brief, this is not amplified but defendant adds the objection that the interrogatory concerns its preparation for trial. In support of this objection defendant states the proposition that "a litigant cannot compel disclosure of knowledge and information acquired in preparation for trial." Defendant does not argue that this information is protected under the attorney-client or work-product-of-an-attorney theories. So far as these theories go, plaintiff in its reply memorandum concedes that "If defendant's counsel, unaided by others, made the investigations personally they may so state and refuse to answer."

I cannot accept the broad proposition asserted by defendant. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451, made it clear that even an attorney's preparations for trial are not privileged from discovery under all circumstances. The broad liberal purposes of the deposition-discovery rules do not seem to me to be consistent with the refusal of discovery of facts obtained in the course of trial preparation by others than lawyers.

Plaintiff seeks the information requested by this interrogatory in order to discover alleged attempts by defendant to intimidate or interfere with its witnesses and in order to prevent surprise at the trial. Of the four personal investigations as to which plaintiff seeks information, three apparently concern two of plaintiff's officers and one concerns plaintiff's attorney. Be that as it may, the discovery of information useful in the possible impeachment of witnesses and the controverting of reader interest surveys is relevant and discovery of such matters should be permitted. This, however, should not extend to reports of investigators, at least on the present showing. Floe v. Plowden, D.C., 10 F.R.D. 504. Such matters while not strictly the work of an attorney should

not be opened to the opposing party without a substantial reason. Interrogatory VIII A (1)(g) and the interrogatories which incorporate it by reference are therefore stricken.

### Interrogatory IX.

Apart from the objection as to the period of time covered, defendant objects to Interrogatory IX on the grounds of irrelevance, that it requests opinions and contentions and that an excessive and oppressive amount of research and compilation of data as to matters which are "almost entirely known by the plaintiff" is required.

Interrogatory IX seeks a classification of the advertising and editorial content of 29 issues of defendant's magazine into three categories, radio-tv, electrical appliance and all others, plus a breakdown of the editorial content dealing with the last two categories. With respect to each advertisement, it further seeks the name of the advertising agency which placed it, the net amount received by defendant for publishing it and identification of the contract pursuant to which it was published.

Plaintiff desires this information to show defendant's course of competitive conduct and particularly the relationship between its efforts and its revenues in the radio-tv field. It hopes to show that the revenues from the radio-tv field were such that, when they are compared to the efforts exerted and expenses incurred in that field, the inference will flow that defendant's activities in that field were not for legitimate business purposes and were part of the alleged restraints of trade and monopolization of this field. Incidentally, Interrogatory X inquires into the matter of defendant's efforts and expenses and its relevance is closely linked to this interrogatory. The relevance of Interrogatory X will be considered later in connection with the other objections addressed to it. At this point, however, it can be said that the relevance of the questions put in Interrogatory IX is clear.

The next objection to this interrogatory is that it calls for opinions and contentions.

This is based on questions which ask defendant to identify and classify each advertisement, article or editorial commentary relating to, or which defendant will claim relates to, three categories of subjects: (1) radio, television or sound reproduction sets, parts or accessories, (2) electrical appliances or household labor saving devices and (3) any other subject matter. In classifying, the difference between facts, opinions and contentions is of course a matter of degree. Although interrogatories requiring the expression of opinion and contentions have in some decisions been stricken, it has been recognized that many such rulings have gone too far and can tend to defeat the purposes of the deposition-discovery rules. 4 Moore's Federal Practice 2nd Ed. § 33.17.

■ Whether an advertisement relates to a television set or a washing machine is more in the nature of fact than opinion. It is also true that an article, editorial commentary or advertisement may be of such an ambiguous nature as to require some expression of opinion in order to answer the question. To describe the result, however, as fact or opinion serves no useful purpose. No sound argument has been advanced why an interrogatory requiring classification should be stricken just because the classification may require some expression of opinion.

The question also literally inquires what defendant will claim. However, the mere employment of the word "claim" should not make a question defective. In a sense, all interrogatories inquire into the answering party's contentions. Usually, they draw out the answering party's view or understanding of the facts and it is pretty well bound by its answer. This question does no more than that. It attempts to draw out defendant's view or understanding as to the classification of the contents of the magazines, and that classification is as much a matter of fact as any other litigated issue.

■ The final objection of excessive research and compilation of data is sought to be supported by the statement in defendant's affidavit that it would take two men working full time 29 weeks to answer parts of this interrogatory. In addition, defendant claims that plaintiff should be required to compile its own data since it has access to copies of the various issues of defendant's magazines, defendant's rate cards and the Standard Advertising Register which lists some 13,000 advertisers, their products and agency connections. It is apparent that plaintiff can make its own classification of the contents of the various issues of defendant's magazine. In fact, upon the oral argument, plaintiff indicated that the main purpose of these questions was to obtain an admission from the defendant. It seems also that plaintiff has access to the names of the advertising agencies placing all the advertisements and can determine the income from each advertisement from the cards which state "Electrical Merchandising" advertising rates. At least plaintiff does not show any facts indicating otherwise. In view of the amount of compilation these questions would require of defendant and the availability to the plaintiff of the information sought, these questions should not be allowed in their present form. This is without prejudice to plaintiff's serving different interrogatories in which it states the results of its own compilation of the information sought by these questions and asks defendant whether they are correct, and, if not, in what respect they are incorrect and what the correct information is.

This ruling applies to all the questions in Interrogatory IX, except for the interrogatories numbered IX A 1(b), IX A 3(b), IX A 5(b) and those interrogatories insofar as they are incorporated by reference elsewhere. These questions ask defendant in substance to identify each contract pursuant to which each advertisement in specified issues of "Electrical Merchandising" was published. It does not appear that this information is readily known to plaintiff or that the answer would require excessive compilation on defendant's part. These questions therefore, should be answered.

### Interrogatory X.

The objections applying to Interrogatory X, not thus far considered, are that it requires the disclosure of trade secrets and that it is irrelevant. Where information is relevant and necessary to the presentation of a case the consequence of disclosure of a trade secret is not a bar to discovery. Marshwood Co. v. Jamie Mills, Inc., D.C., 10 F.R.D. 386. Grasselli Chemical Co. v. National Aniline & Chemical Co., D.C., 282 F. 379 (under the old Equity Rules). On the other hand the circumstances might warrant the issuance of a protective order under Rule 30(b), F.R. C.P., 28 U.S.C.A. The relevance and objective of the interrogatory would have a bearing on these questions and therefore ought to be considered first. As was mentioned earlier, there is a close relationship between this Interrogatory and Interrogatory IX.

Interrogatory X requests a breakdown of publishing and distributing costs of some 28 issues of defendant's magazine. Interrogatory IX calls for an analysis of the contents of defendant's magazine and a breakdown of the advertising revenues according to the classifications of advertisements in some 29 issues of the magazine. Plaintiff says it expects to be able to prove from these answers that, whenever competition threatened "Electrical Merchandising", defendant swelled its print orders and doubled its editorial efforts to the point of operating at a deliberate loss for the purpose of killing the potential competition. It also hopes, in conjunction with other evidence, to show by comparing the costs of defendant's efforts in the radio-tv field that they were not justified by the advertising revenue gains from that source and that this fact in conjunction with other evidence will enable it to establish that the purpose of these efforts was not legitimate competition but was to drive plaintiff out of business. The relevance of the information sought in this Interrogatory to the subject matter of plaintiff's action would seem clear.

There remains with respect to Interrogatory X the objection that it requires disclosure of a trade secret. In view of what has been said above concerning the relevance of this information, its utilization may involve a task of some complexity, perhaps depending on the juxtaposition of many of the minor details of the information that may be obtained and the details of the information, as distinguished from mere conclusions therefore, is of importance to plaintiff in presenting its case. Hence it does not seem an appropriate case for substituting for disclosure the services of a third person, an expedient employed in the directives which will follow in connection with Interrogatory XI. The secrets involved, while something the defendant would want to keep to itself, do not amount to a secret process or an item or service sold in trade. They would seem to be matters that could be brought out on the trial and therefore should be amenable to the discovery process.

In Cook Paint & Varnish Co. v. Cook Chemical Co., D.C., 8 F.R.D. 93, which defendant cites as being most closely analogous to this case, the court overruled the objection made on the ground that the interrogatories required the disclosure of trade secrets. To be sure, the court in the Cook case made the point that the parties were not competitors but it also relied on authority to the effect that the records in the files of a business organization can be opened to an adversary's discovery. It referred to the language of the court in Hickman v. Taylor, 3 Cir., 153 F.2d 212, 217, affirmed 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and the cases cited in footnote 8 therein. In Sikes Co., Inc., v. Swift & Co., D.C., 11 F.R.D. 315, the court held that a secret formula was privileged but it appears that the ingredients of the formula were supplied. While in Wagner Mfg. Co. v. Cutler-Hammer, Inc., D.C., 10 F.R.D. 348, the court sustained objections to certain interrogatories, it appeared to do so on the ground either that the interrogating party already had obtained all the information it

needed or that all such information had been made available to it. At any rate, it did not explicitly deal with the objection on the ground of disclosure of trade secrets. None of the cases cited by defendant therefore militate against the holdings in the Marshwood and Grasselli cases cited above.

Defendant seems to be most concerned that this information be not delivered to the plaintiff which is its competitor. I do not see how it is possible to avoid this and at the same time satisfy the purposes of the deposition-discovery rules unless defendant desires an order restricting the disclosure of this information to plaintiff's attorney. This is of course to be without prejudice to such ruling as the trial judge may make on the offer of this information in evidence.

### Interrogatory XI.

There are four objections to Interrogatory XI, which, aside from a few minor matters, call for the names, addresses and classification of the subscribers to defendant's magazine "Electrical Merchandising" and the names and addresses of persons appearing on certain lists which defendant rents for use in circularizing persons in certain trade classifications. The objections are that the interrogatory calls for irrelevant information, the revelation of trade secrets and the production of documents and imposes oppression and an undue burden. The objection of oppression and undue burden seems to rest on the number of answers required in supplying the names and addresses of the persons appearing on the subscription and other lists and its multiplication by four on the theory apparently that Interrogatory XI A 1 and its counterparts require three additional answers with respect to each name and address. Interrogatory XI A 1, and its counterparts ask for the name of the person preparing the answer, all sources consulted by defendant's representative for the purpose of preparing the answer and all sources of information actually used in preparing the answer. For aught that appears, these source questions can be answered with only three answers for each list. So far as the lists themselves are concerned, it is plain that they are regularly used and reproduced by defendant in its business. There is no merit therefore in this contention of oppression and undue burden in preparing the answers.

The objection that these questions require the production of documents similarly is without merit. The questions ask for lists of subscribers to "Electrical Merchandising" and of persons whose names and addresses are compiled and maintained as a means of circularizing certain groups or classes of persons by mail. Since these lists are regularly reproduced in defendant's business they could hardly be deemed documents which could be obtained only by proceeding under Rule 34, F.R.C.P.

The relevancy objection addressed to this interrogatory is met by the explanation that the information sought tends to show the competitive positions of plaintiff and defendant and the subdivisions of the electrical field. In an action of this nature, the competitive picture and structure of the industry or activity are clearly relevant. Since these questions tend to elicit such a picture, they are relevant. Turning to the final objection, it seems clear that the subscription and rental lists are valuable trade secrets. As indicated in the discussion of Interrogatory X above, however, that fact is not a bar to an inquiry by way of interrogatories if the inquiry is into relevant matters and is necessary to the presentation of the inquiring party's case. Thus, the court should not sanction such an inquiry except for cogent reasons and it can in appropriate circumstances provide for a protective order.

Plaintiff seeks this information to establish the "degree of competition" between its magazine and the defendant's magazine and to establish the separate characteristics of the appliance and radio phases of the business.

With respect to the first objective, defendant has signified in its memorandum that it would be willing to concede that the parties are competitors. A stipulation

to that effect might satisfy plaintiff's first objective. If not, it would seem that this objective would easily be met by having an impartial third person compare the subscription lists of both magazines to determine the degree of circulation duplication according to the plaintiff's directions. This task would not require the exercise of judgment or discretion by the third person and the report should give plaintiff just what it wants. In this way then plaintiff would be able to obtain what it seeks thereby serving the purposes of the deposition-discovery rules and at the same time defendant's interest in preserving its trade secrets could be protected.

The second objective respecting the separate characteristics of the two business phases presents a slightly more difficult problem. At least, the questions concerning the classifications of subscribers of defendant's magazine, XI B and XI C, can be answered without causing any harm to the defendant. The same would apply to the questions asking for an identification of the persons compiling and maintaining the lists and the source of the answers, as required by subparagraphs 1 and 2 of questions XI D, XI F, XI G, XI H, XI I and subparagraphs 1 and 3 of question XI E. The difficulty arises as to the request for the names and addresses of persons appearing on the specified rental lists. The mere fact that defendant maintains separate lists of appliance dealers and of radio servicing technicians may tend to show some kind of a separation between the appliance and radio phases of the business. Without doubt, plaintiff wishes to go further on the basis of the information sought, but that in all likelihood would be only to compare the various lists for duplication and to correlate the various lists. Here again, it would seem likely that plaintiff's objective can be satisfied by having an impartial third person make and report on the comparisons desired by the plaintiff.

Unless plaintiff can show that a protective order providing for such a procedure would prevent its adducing all the relevant information it needs to present its case, such an order would appeal to me as just under the circumstances. To serve the objectives of the plaintiff properly, a necessary condition of such an order would be that the determinations of the third person would stand in lieu of the rental lists themselves and that defendant would not be permitted to attack those determinations unless it served notice on plaintiff within 20 days after the report of the determinations that it proposed to attack them and made available the respective lists to the plaintiff at the same time.

The relevance of question XI E 2 asking for the names and addresses of clients to whom defendant rented a specific list is so doubtful as to require its being stricken.

### Interrogatory XII.

Defendant raises two objections to Interrogatory XII as a whole and several objections to parts of the interrogatory some of which have already been determined in connection with other interrogatories. The objections to the entire interrogatory are that it is irrelevant and that it improperly calls for defendant's contentions.

Interrogatory XII is directed toward some eleven specified reader interest surveys and inquires into various matters, such as (a) the preparation of the surveys, (b) the persons involved in their preparation, (c) the relationship of such persons with advertisers or manufacturers and with defendant, and (d) the making of other surveys relating to any of defendant's magazines. All this information can have a bearing on the truth or falsity of defendant's claims of pre-eminence with readers and therefore this interrogatory is as relevant as the others dealing with defendant's representations as to reader interest surveys. In any event, defendant will not have to supply all this information if it is not going to refer to these surveys in any way or make them available to its co-defendant. This is so because plaintiff has conditioned the supplying of the information as to each survey on the answer defendant gives to the question "whether defendant McGraw Hill will rely upon such survey, or in any way refer to such survey

or will make such survey available to co-defendant James H. McGraw, Jr. during the course of this litigation". If defendant's answer is an unequivocal "no", it is not asked to give any further information with respect to that particular survey.

Now, defendant raises the objection that this question as to the use of the survey, preceding the other questions put as to each survey, improperly calls for defendant's contentions. The point is without substance. The question calls only for a "yes" or "no" answer and by answering "yes" defendant commits itself at most that it will "in any way refer to such survey". Beyond this, allowing these questions can have the salutary effect of saving defendant the trouble of answering all the other questions in the interrogatory and requiring defendant to commit itself only to a very slight extent. If anything, then, there is good reason to insert this rather than to strike it.

There are three groups of objections addressed to parts of Interrogatory XII. which are not completely dealt with elsewhere in this memorandum. The first group of objections applies to Interrogatories XII A 2(a), B 2(a), C 2(a), D 2(a), E 2(a), F 2(a), G 2(a), H 2(a), I 2(a) and J 2(a). For these objections reference is made by defendant to the objections it raised to Interrogatories II B 1(b) (i)–(xvi) and II B 1 (c) (i)–(xvi) which are incorporated by reference in these interrogatories. The objections to II B 1 (b) (i)–(xvi) and II B 1(c) (i)–(xvi) have already been considered in the discussion of objections to Interrogatory II and the same considerations apply here except as to the objection that the questions are based on a misunderstanding of an advertisement to which they refer. Here, in Interrogatory XII, no such advertisement is referred to, nor do the questions incorporated in it by reference to parts of Interrogatory II refer to any advertisement. This objection, then has no application to Interrogatory XII and nothing else indicates that these questions are inappropriate. The same determinations of objections as were made

for Interrogatories II B 1 (b) (i)–(xvi) and II B 1 (c) (i)–(xvi) are made here except as to alleged misunderstanding which has been just discussed above.

Next is the objection to Interrogatories XII A 2(h), B 2(d), C 2(d), D 2(e), E 2(e), F 2(d), G 2(e), H 2(c), I 2(e) and J 2(e) which ask whether a particular survey has been used in the solicitation of advertisements for defendant and for the name of defendant's magazine and salesman and the advertiser or agency involved in each case, and Interrogatories XII D 2(m) (i)–(iv), E 2(j) (i)–(iv), F 2(f) (i)–(iv), G 2(g) (i)–(iv), H 2(h) (i)–(iv) and J 2(f) (i)–(iv) which ask for the names and addresses of advertisers to whom the particular survey has been submitted and who have requested further information and the substance of these requests and defendant's responses. The objection to these questions is that the answers would require an excessive and oppressive amount of research or compilation. These questions are closely analogous to Interrogatories II B 1(b) (xii) and II B 1(c) (xii) which, however, only call for the names and addresses and employers of all individuals to whom certain surveys were distributed. The present interrogatories obviously go much further.

I concluded with respect to Interrogatories II B 1(b) (xii) and II B 1(c) (xii) that defendant should only be required to answer to the extent that it already has record of the information sought. The same reasons apply here and therefore my conclusion is the same. I might add parenthetically that defendant should be allowed to respond to the question asking for the substance of requests of advertisers for further information concerning the surveys and defendant's answers to them by supplying plaintiff with copies or originals of such requests and responses if written. This should satisfy plaintiff's purposes and may at the same time reduce the amount of work imposed upon the defendant in answering these questions. It may be easier to copy the original letters than to digest them.

■ The third group of objections is addressed to Interrogatories XII B 2(e), D 2(j), and E 2(h). The objections are made on the ground that the information sought is irrelevant and requires excessive and oppressive research and compilation. Interrogatory XII B 2(e) asks for the total amount of advertising revenue received by defendant in 1945, 1946 and 1947 for Motorola advertisements and the magazines in which the advertisements appeared with statements of the separate pages and issues. Apparently, the question is directed toward information which would show the relationship between defendant and Motorola, a manufacturer. Motorola, it would seem from the interrogatory, is connected with the particular survey inquired into by Interrogatory XII B and therefore this question is relevant as showing the relationship of defendant and persons involved in the making of the survey. With respect to the part of the question asking for the pages and issues in which the advertisements appeared, taking into account the objection of research and compilation, the relevance of these details in themselves would seem to be so slight that the task of compiling that information should not be imposed upon the defendant. The questions asking these details need not be answered unless the information appears in defendant's books of account or other readily accessible secondary source.

Interrogatories XII D 2(j) and E 2(h) ask for the names and addresses of the advertising agencies which handled any General Electric Company and Blackstone Corporation advertising during 1949, 1950 and 1951, and which dealt with defendant's representatives. Here again, the questions are relevant as showing the relationships between defendant and manufacturers which appear from the interrogatories to be connected with certain surveys, while the basis for the defendant's claim that they require "excessive and oppressive research and compilation of data at great expense" is hardly apparent. These questions therefore are allowed.

### General.

The defendant will be allowed six months in which to supply all the answers that are required. The answers should, however, be supplied periodically in suitable groups during that time so that plaintiff may have the benefit of the information as soon as available. The parties may submit in their proposed orders a schedule of times within which specific parts of the interrogatories are to be answered.

Settle order on notice.