SANDEE MANUFACTURING CO., a Corporation, Defendant,

v.

ROHM & HAAS COMPANY, a Corporation, Defendant.

No. 55 C 1974.

United States District Court
N. D. Illinois, E. D.

March 20, 1959.

M. G. Kaufman, James C. Spangler, Erwin H. Greenberg and Carl Greenberg, Chicago, Ill., for plaintiff.

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff is an Illinois corporation engaged in the extrusion of plastic materials which it sells in interstate commerce. Defendant is a Delaware corporation engaged in the manufacture and sale of various chemical products, including methyl methacrylate monomer from which it produces cast sheet and molding powder.

The complaint states that the action is based on Sections 1, 2, 7, and 8 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, 15 note, 7, and Sections 1, 4, 12, and 16 of the Clayton Act, 15 U.S.C.A. §§ 12, 15, 22, 26. Plaintiff seeks treble damages under Section 4 of the Clayton Act. Defendant has filed a motion to strike certain portions of the complaint and an objection to certain interrogatories propounded to it by plaintiff. I shall first consider defendant's motion to strike.

Briefly, the complaint states that plaintiff is in competition with defendant in the sale of acrylic sheet; that as a result of defendant's violation of the sections of the Sherman and Clayton Acts relied on, plaintiff has been prevented from competing with defendant in the sale of acrylic sheet from on or about November 15, 1953, to and including the date when this complaint was filed which is November 1, 1955; that the acrylic sheet which plaintiff was thus prevented from manufacturing and selling in competition with defendant's sheet, is sheet extruded from a powder, known as acrylic molding powder, which in turn is manufactured from a liquid, known as methyl methacrylate monomer; that the acrylic sheet which defendant is manufacturing and selling and with which competition by plaintiff's extruded sheet has been prevented, is sheet cast directly from the methyl methacrylate monomer. The complaint alleges that since 1950 defendant has produced and sold approximately 70% of all the methylmethacrylate monomer sold in the United States, that E. I. DuPont deNemours & Co. has produced and sold approximately the remaining 30% thereof, and that *Rohm & Haas Gesellschaft mit beschraenkter Haftung,* a corporation organized and existing under the laws of West Germany, and Imperial Chemical Industries Ltd., a corporation organized and existing under the laws of Great Britain, are the only other producers and sellers of methyl methacrylate monomer but that little if any methyl methacrylate monomer is imported into the United States. The complaint further alleges that prior to June 1, 1953, defendant has manufactured and sold approximately 80% of all the acrylic cast sheet produced in the United States, and that E. I. DuPont deNemours & Co. has produced and sold approximately the remaining 20% thereof; that after June 1, 1953, defendant has manufactured and sold approximately 99% of all the acrylic cast sheet produced in the United States and that little or no acrylic cast sheet is imported from without the United States. The complaint further alleges that since 1950 defendant has manufactured and sold approximately 75% of all of the acrylic molding powder produced and sold in the United States, and that E. I. DuPont deNemours & Co. has manufactured and sold approximately the remaining 25% of such molding powder. Little or no acrylic molding powder is imported from without the United States.

Defendant's acts, upon which plaintiff relies as violations of the cited provisions of the Sherman and Clayton Acts, are alleged to be as follows:

(1) That defendant has sought to monopolize the production, manufacture and sale within the United States, of the methyl methacrylate monomer, the cast acrylic sheet and the acrylic molding powder, in particular:

(2) That despite a reduction in the cost of the principal ingredients, the price at which methyl methacrylate monomer is sold by defendant has not been correspondingly reduced.

(3) That defendant has entered into an agreement with E. I. DuPont deNemours & Co., *Rohm & Haas Gesellschaft mit beschraenkter Haftung* and Imperial Chemicals Industry Ltd., to fix and maintain in the United States and in various parts of the world, the price of methyl methacrylate monomer at a level which is disproportionate to the reduced cost of the principal ingredients.

(4) That defendant has kept and is keeping the price of acrylic molding powder at a level which does not reflect the reduction in cost of the principal ingredients used in the production of methyl methacrylate monomer and thus of the powder itself.

(5) That defendant has entered into an agreement with E. I. DuPont deNemours & Co. to keep the price of the acrylic molding powder high disproportionately to the reduced cost of the principal ingredients.

(6) That defendant charges itself for the methyl methacrylate monomer used in its production of cast acrylic sheet a price far below the price at which it is willing to sell such monomer to any purchaser.

(7) That defendant charges itself for the methyl methacrylate monomer used in its production of acrylic molding powder a price far below the price at which it is willing to sell such monomer to any purchaser.

The gist of plaintiff's complaint, therefore, is that as a result of defendant's all but complete alleged actual control of the production, manufacture and sale of methyl methacrylate monomer, cast acrylic sheet and acrylic molding powder, and its alleged complete control of the field through agreements with other producers, manufacturers and sellers of these materials and products, it has been able and has in fact kept the price of cast acrylic sheet low and the price at which it sells the basic ingredient, the monomer, and the other product, the powder, high thus making it impossible for others (a) to compete in the manufacture and sale of cast acrylic sheet and (b) to compete in the manufacture and sale of acrylic molding powder.

Plaintiff's position is that it has been forced out of competition with defendant in the acrylic sheet field either because the price of the molding powder, from which plaintiff extrudes its competitive product, the extruded acrylic sheet, is kept at an artificially high level through the device of keeping the basic ingredient, the monomer, high, or in the alternative, because the price of the cast acrylic sheet has been kept at an artificially low level through the device of keeping the basic ingredient, the monomer, at a considerably higher price when offered to purchasers than the price which defendant charges itself for that ingredient in the manufacture of cast acrylic sheet.

Defendant's motion to strike seeks to expunge from the complaint all reference to the methyl methacrylate monomer including reference to the price which defendant charges itself for such monomer (a) in the production of the cast sheet and (b) in the production of the acrylic molding powder, on the ground that such reference is immaterial since plaintiff does not claim ever to have purchased, utilized or sold any monomer, or to have attempted to do so, but claims solely to have been damaged with regard to loss of an investment and profits from extruded methyl methacrylate sheet manufactured from methyl methacrylate

powder. In addition defendant objects to any reference to the activities of *Rohm & Haas Gesellschaft mit beschraenkter Haftung* and Imperial Chemicals Industry Ltd. with respect to methyl methacrylate monomer, as irrelevant and prejudicial to defendant in its effect upon a jury.

Defendant's position here cannot be accepted. Its contention that all reference in the complaint to methyl methacrylate monomer is irrelevant to plaintiff's claim fails to give credit to the structure of plaintiff's allegations. One of the central links in this structure is the allegation that defendant charges itself less for the basic ingredient, the monomer, from which both the cast sheet and the powder are manufactured, than it charges other potential manufacturers of such sheet and powder. Such practice, if established, stands clearly condemned in United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 438. Defendant argues that this central link in the structure of plaintiff's complaint is meaningless without some show of unlawful monopoly in the basic ingredient, the monomer. It points to the fact that in United States v. Aluminum Co. of America, supra, there was proof of restrictive practices in the basic material. While it is an interesting question whether a bare allegation of defendant's actual substantial occupation of the domestic market in the monomer coupled with an allegation that defendant is offering such monomer at a substantially higher price to potential domestic producers of cast sheet and molding powder, than that which it charges itself for the monomer in the manufacture of the sheet and molding powder, would be sufficient to charge a violation under the Sherman and Clayton Acts, plaintiff in fact goes further. Plaintiff alleges, in effect, that defendant, not satisfied with its actual 70% occupation of the domestic market in the monomer, entered into an agreement with E. I. DuPont deNemours & Co.,

which accounts for the other 30% of the domestic market, and with *Rohm & Haas Gesellschaft mit beschraenkter Haftung* and Imperial Chemical Industries Ltd., the only other producers of the monomer, to fix prices of the monomer. This is therefore not a case where allegations of restrictive practices in the basic ingredient, of both cast sheet and molding powder, are lacking. It is, on the allegations of the complaint, a case which is on all fours with United States v. Aluminum Co. of America, supra. These allegations are certainly relevant and possibly essential to support the central link in the structure of plaintiff's complaint.

Defendant's motion to strike is denied.

I come next to the interrogatories. So far as material to the objections raised by defendant, its answer alleges, in substance, that during the period August 1950 through November 1955 plaintiff was at all times able to purchase methyl methacrylate monomer on the open market and to convert it into cast sheet or molding powder; that during the same period plaintiff was at all times able to purchase all the ingredients which go into the manufacture of methyl methacrylate monomer itself on the open market; that during the same period other firms in the United States were engaged in the manufacture and sale of cast methyl methacrylate sheet in successful competition with defendant (naming them); that during the same period other firms in the United States were engaged in the manufacture and sale of extruded methyl methacrylate sheet in successful competition with defendant's cast sheet (naming them); that cast methyl methacrylate sheet competes not only with extruded methyl methacrylate sheet but with other acrylic products, other members of the vinyl compound family, and other plastics, all of which are produced and sold in the United States by defendant's competitors.

In addition defendant's answer sets up the defense of the applicable period of limitation which, in this jurisdiction, is two years. Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912; Schiffman Bros. v. Texas Co., 7 Cir., 196 F.2d 695.

■ Defendant's first objection to the interrogatories is that they range over a period from August 1950 to November 1955. Defendant seeks to limit these interrogatories to the period November 1953 to November 1955 as being the two year period of limitation. In any event, defendant argues that the scope of discovery ought not to precede July 1951 the month in which plaintiff entered the production of extruded methyl methacrylate sheet. Defendant's objection cannot be sustained. It is well settled that in suits of this nature, where defendant's monopoly position is sought to be established, discovery is not limited to the period of limitation (Burroughs v. Warner Bros. Pictures, Inc., D.C., 12 F. R.D. 491), nor is it limited to a period measured from the date when plaintiff first came into existence or commenced competing activities. Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., D.C., 12 F.R.D. 531; Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D.C., 7 F.R. D. 260; see Baush Machine Tool Co. v. Aluminum Co. of America, 2 Cir., 72 F.2d 236, 239, certiorari denied 293 U.S. 589, 55 S.Ct. 104, 79 L.Ed. 683.

■ Defendant's second objection to the interrogatories is that they are not confined to defendant's manufacture and sale of methyl methacrylate powder and cast methyl methacrylate sheet but range over other acrylic products. Defendant's main point here is that any interrogatories involving methyl methacrylate monomer are irrelevant to plaintiff's claim. This objection involves the same reasons as were urged in support of defendant's motion to strike all reference to the monomer in the complaint.

My rejection of this objection proceeds on the same grounds as my rejection of defendant's motion to strike and I need not repeat them here. Defendant's other objection here is that some of the interrogatories inquire into the characteristics and uses of a whole range of acrylic products manufactured and sold by defendant and by others, there being 25 such products, and that this inquiry cannot possibly have any relevance to plaintiff's claim. I cannot say that this inquiry has no relevance to plaintiff's claim when it is part of defendant's contention in the answer that those products compete with each other and that since many of them are manufactured and sold by other firms it is unrealistic to isolate two of them, methyl methacrylate cast sheet and extruded methyl methacrylate sheet, for independent consideration on the issue of monopoly. While it is not necessary, to sustain the relevancy of interrogatories, that they be relevant directly to the issues raised by the pleadings provided that they are or may become relevant to the subject matter of the action (Glick v. McKesson & Robbins, Inc., D.C., 10 F.R.D. 477; Gutowitz v. Pennsylvania R. Co., D.C., 7 F.R.D. 144; 4 Moore's Fed.Prac. 2d Ed. par. 33.15), clearly where such interrogatories are relevant directly to the issues raised by the pleadings they cannot be attacked. Browning King Co. of New York v. Browning King & Co., D. C., 5 F.R.D. 386.

■■ Defendant's third and final objection to the interrogatories is that they inquire into confidential cost information and defendant's internal bookkeeping, and require disclosure of defendant's confidential manufacturing processes, capacity, customers and sales. As to the cost information and defendant's internal bookkeeping, the inquiries are clearly relevant to plaintiff's claim which is that defendant is keeping prices of methyl methacrylate monomer and molding powder high and is employing the device of charging itself less for the

58

monomer used in the production of cast methyl methacrylate sheet and molding powder than it is charging other purchasers, in order to prevent competition. I see nothing secret or confidential about such information. But defendant contends that many of the questions involving cost require disclosure of confidential manufacturing processes, and that some of the interrogatories specifically ask for such information. The general rule here is that there is no absolute privilege protecting such information from disclosure (Louis Weinberg Associates v. Monte Christi Corp., D.C., 15 F.R.D. 493; Cities Service Oil Co. v. Celanese Corporation of America, D. C., 10 F.R.D. 458; 8 Wigmore on Evidence, 3rd Ed. Sec. 2212; 4 Moore's Fed.Prac. 2d Ed. par. 26.22). But the courts at their discretion will protect such information from disclosure where it appears that it is not sufficiently important in its bearing on the issues in the case. Plaintiff's interrogatories do not seek to force defendant to reveal any secret processes, concealed methods of compounding and the like. So far as they seek to obtain information with regard to defendant's products they are confined to information regarding the ingredients of such products without directly calling for the proportions in which such ingredients are used in the manufacture of any such product. It is well settled that such information, if otherwise relevant to the issues in the case, is not protected from disclosure. Glick v. McKesson & Robbins, Inc., D. C., 10 F.R.D. 477; Lenerts v. Rapidol Distributing Corp., D.C., 3 F.R.D. 42.

Defendant's objection to interrogatories requiring disclosure of capacity, customers and sales must equally fall in view of its position in the answer that certain named companies successfully compete with it in the manufacture and sale both of the cast sheet and of the extruded sheet.

Defendant's objections to interrogatories are overruled.