**BATTLE CREEK EQUIPMENT CO., a Michigan Corporation, Plaintiff,**

v.

**ROBERTS MANUFACTURING COMPANY, INC., and Melvin Duklewski, an individual, Defendants.**

**No. K78–39 C.A.**

United States District Court,
W. D. Michigan, S. D.

April 2, 1981.

Randall G. Litton, Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich., Hugh L. Fisher, Fisher, Gerhardt & Groh, Birmingham, Mich., for plaintiff.

Wallace H. Glendening, Melanie Tobin LaFave, Jaffe, Snider, Raitt, Garratt & Heuer, Detroit, Mich., for defendants.

OPINION

FOX, Senior District Judge.

Plaintiff initiated this trademark infringement action against defendant Roberts Manufacturing (Roberts) in January 1978. A permanent injunction was issued on April 2, 1980, restraining Roberts from using certain infringing words in the sale,

distribution, advertising or promotion of defendant's products. The matter is presently before this court on plaintiff's motion to compel discovery and motion for contempt.

*Motion to Compel Discovery*

Plaintiff has filed a motion requesting this court to compel Samuel V. Duklewski to answer questions certified from a deposition taken on September 11, 1980. The questions asked concern Roberts' customer list, and the percentage difference in price charged different distributors. Plaintiff argues that the markup on defendant's pads, and to whom these pads have been sold is of critical importance in determining the extent of damages.

Roberts objects to the discovery on the grounds that the information sought is a trade secret, irrelevant, unnecessary to the resolution of the present controversy, and that the defendant will suffer great harm if this information is disclosed. Roberts stresses the fact that they are in direct competition with Battle Creek Equipment, and Roberts is one of the smallest suppliers of heating pads while Battle Creek is one of the largest. Further, Roberts points to a list of documents it has already supplied plaintiff with to show that they have been extremely cooperative, and that the information sought is irrelevant.

This court has already found defendant to have committed various acts in violation of trademark and copyright law. A permanent injunction has been issued preventing defendants from further using certain infringing language in the sale, distribution or advertising of heating pads. Essentially, the only issues remaining are for an accounting, damages, costs, and attorney fees. To determine the amount of damages, it is crucial that plaintiff know to whom the infringing materials were sold, and what the markup was to these different customers. If this information is beyond discovery, there could never be an award of damages in a trademark infringement case.

Roberts contends that the customer list and pricing policy are protected trade secrets, and therefore not discoverable without a greater showing of need. They cite *Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 543 (S.D.N.Y.1964), for the proposition that customer lists should not be made available to competitors. However, in that case, the court employed a procedure whereby the needed information could be disclosed without irreparably harming the competitor. The court explained:

It would seem therefore, that the proper procedure would involve the selection of an impartial third person, to be paid by Paramount but acceptable to each party, who will examine Triangle's records with regard to the information sought in interrogatories 2(a) through 2(e) and 5(a) through 5(d). See *American Crystal Sugar Co. v. Cuban-American Sugar Co.*, 23 Fed.Rules Serv. 26b.31, Case 3 (S.D.N.Y. 1956); *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.*, 12 F.R.D. 531 (S.D.N.Y.1952). This third person will tabulate the information while at the same time maintaining the secrecy of the actual suppliers and customers.

*Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 543 (S.D.N.Y.1964).

Here, while the customer lists and pricing structure are akin to trade secrets, and potential harm could occur if this information were made available to plaintiff, this harm must be balanced against the plaintiff's right to have the information. Balancing the factors in this case, it is clear that discovery should be compelled. However, since the material sought is central to Roberts' continued existence, this court orders that a neutral third party, to be paid by Battle Creek Equipment, be appointed to tabulate the information with a purpose of establishing the amount of damages. The identity of this third person, and the scope of his duties are to be mutually agreed upon by the parties within sixty days of the date of this opinion. If the parties are unable to agree within that time, the court will appoint such a person.

*Motion for Contempt*

On April 2, 1980, this court issued an injunction permanently restraining defend-

ant from using certain infringing language in the sale, distribution, advertising or promotion of their product. Plaintiff now moves this court to hold defendant in contempt for repeated violations of the injunction. Defendant Roberts Manufacturing argues that the injunction is too vague to be enforceable through contempt proceedings, and further that the injunction does not require them to take any affirmative action to withdraw infringing materials from the marketplace.

The first violation plaintiff cites is the failure of Roberts to advise agents of the permanent injunction. In his deposition Samuel Duklewski is ambiguous about whether he informed distributors of the injunction or not. Plaintiff contends that defendant at no time attempted to stop the sale of boxes, distribution of literature, or use of labels which used the infringing language. There was no effort to contact those people defendant knew or could reasonably have determined had possession of infringing materials.

Defendants contend that the injunction is too vague to be enforceable through contempt proceedings. Further, they assert that no affirmative duty was placed on them to inform others of the injunction.

The second alleged violation of the injunction is the claim that Roberts continued making pads with labels that were in violation of the injunction. Roberts admitted its use of certain labels containing the language "The Original Moist Heat Electric Fomentation Pad Made by Roberts Manufacturing," and "The Original Moist Heat Electric Fomentation Pad Made by Shugarman." Pads with these labels were sold until recently.

Roberts contends that the language of the labels does not violate the injunction. The injunction in paragraph 3(e) prevents Roberts:

From falsely representing that defendants' pad is "The Original Moist Heat Pad," "The Original Health Pad," or similar representations.

Since the labels in question add the phrase "made by Roberts Manufacturing Co., Inc.,"

defendants contend that no confusion is created, and the terms of the injunction are not violated. Further, Roberts maintains that the label is placed inside the packages so there is no effect on consumer choice, and secondly, that after plaintiff informed Roberts that the wording was objectionable, Roberts voluntarily took steps to remedy the situation.

The third violation of the injunction plaintiff cites is the displaying of an infringing box in the window of Roberts' principal place of business. John W. Doty, President of Battle Creek Equipment, details observing a box in defendant's window with the words "The Original Moist Heat Pad." Plaintiff's attorney further alleges that since credit card signs are also in the window the box was used in the promotion of retail sales. Roberts defends by stating that while the packaging may have been displayed in the window, the office is not a retail outlet. They have attached pictures to their brief and explained that Roberts is located in a small office on a one-way street, suggesting that any violation of the injunction is only de minimus.

Plaintiff further contends that the labels used on the Shugarman pads are in violation since they claim to be patented. It is argued that this patent has been expired for almost 30 years, and is not a proper representation of the patent status of the product. Roberts argues that the pad is not being used any more, and once they became aware of the violation of the injunction, they informed Shugarman that a change in labels would have to be made.

A final violation is the charge that various medical supply houses continued to sell infringing material after the injunction was issued. It is urged that these distributors, as agents of Roberts, violated the injunction, and Roberts, as principal, is vicariously liable for their actions. This court dismissed that charge in the hearing, noting that the distributors were engaged in their own separate business, handled goods sold by numerous manufacturers, and were not controlled by Roberts.

Defendants correctly state that a contempt citation is only proper where the injunction clearly informs a party what conduct is required or prohibited. Rule 65(d) of the Federal Rules of Civil Procedure provides that an injunction must be specific in terms, and shall describe in reasonable detail the acts sought to be restrained. As the court in *Marshall v. Local Union No. 639*, 593 F.2d 1297 (D.C.Cir.1979), stated:

> While courts have inherent power to enforce compliance with their lawful orders through civil contempt, courts need not impose the contempt sanction for every violation; courts should be particularly wary of imposing contempt sanctions for violations of an order that is ambiguous.

In this case, however, while defendants may be able to argue that the injunction is ambiguous as to their duty to remove products already in commerce, several actions are clear violations of the injunction. Displaying a box in the store window which claims defendant's product is "The Original Moist Heat Pad" is a violation. Paragraph 3(e) of the injunction prevents defendant from falsely representing that defendant's therapeutic pad is "The Original Moist Heat Pad." While Roberts may not be liable for the actions of independent medical warehouses scattered across the country, they certainly are responsible for the acts at their own place of business. The fact that they removed the box after Mr. Doty complained does not absolve them for the months they displayed it. Such a callous disregard for a court order cannot be ignored. The fact that the storefront is small or on a one-way street is irrelevant.

The second group of violations of the injunction are those dealing with labels. The injunction enjoins defendants from representing that their heating pad is fully patented or that it is "The Original Moist Heat Pad." Again, the facts indicate that Roberts did not remove the infringing statements until Battle Creek discovered their continued use. While defendants argue that their wording is slightly different from that barred by the injunction, courts have not allowed such "tortured construc-

tions" to avoid the terms and spirit of valid court orders. If defendant had any doubts as to the propriety of its actions, it could have petitioned this court for a clarification of the order. *See, United States v. Greyhound*, 508 F.2d 529, 532 (7th Cir. 1974).

The final area of alleged violations is the failure of Roberts to notify their distributors, and to remove infringing materials from the marketplace. Roberts argues that the injunction did not create an affirmative duty to notify others, or to attempt to remove products already on the shelves. They argue that if the injunction had required such a duty, they would never have agreed to it. Plaintiff probably assumed that defendants would notify their sales agents and distributors of the injunction, and would remove any infringing materials.

This court, after reviewing the injunction, is of the opinion that Roberts was not under a duty to remove infringing products that were already in the marketplace. The injunction is devoid of such an obligation and Roberts could, in good faith, assume that it was under no such obligation. Such a duty on a small manufacturer would impose a great burden. As differences as to the obligations of the defendant arose, the preferred option would have been for the defendant to petition this court for a clarification on construction of the injunction. However, a defendant is not required to seek such a clarification, and a good faith plausible interpretation of the order will be a defense to a contempt motion. *See, United States v. Greyhound*, 508 F.2d 529, 532 (7th Cir. 1974).

Defendant Roberts Manufacturing has violated this court's injunction by using infringing materials in their window display, and by continuing to use labels which claim the product is "The Original Moist Heat Pad," and is patented. These violations, while not being serious, in and of themselves, reflect an indifference to this court's injunction. A defendant cannot operate "business as usual" hoping that the plaintiff is not able to discover further violations. A defendant must make a good faith effort to purge any infringement from his business.

Therefore, Roberts must reimburse plaintiff for costs and attorney fees incurred in investigating, discovering and prosecuting the contempts found. This court would hope that Roberts will inform all its representatives of the injunction, and make a good faith effort in the future to comply with the injunction. If any doubts arise as to future conduct, it is hoped that the defendant would seek a clarification from the court before it engages in potential contemptuous behavior.

Accordingly, the parties are ordered to agree upon a neutral third person, within sixty days of the date of this opinion, said person to have full access to defendant's customer lists and pricing policy. If the parties are not able to agree on the identity of this third person, and the scope of his duties, the court will appoint such person.

Further, for violating this court's permanent injunction by continuing to use infringing materials in a window display, and by continuing to make infringing labels, defendant must reimburse plaintiff for costs and attorney fees incurred in investigating, discovering and prosecuting the contempts leading to this motion.